UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRENDA HILL, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>KAISER FOUNDATION HEALTH PLAN;<br>KAISER FOUNDATION HOSPITALS, INC.,<br>and THE PERMANENTE MEDICAL GROUP,<br>INC.; all doing business as KAISER<br>PERMANENTE MEDICAL CARE PROGRAM,<br><br>    Defendants.<br>_____/ | No. 3:10-cv-02833-LB<br><br>**ORDER (1) DENYING THE PLAINTIFFS'<br>MOTION TO ENFORCE SETTLEMENT<br>AGREEMENT, (2) DENYING MR.<br>FRIEDMAN'S MOTION FOR FEES<br>FROM KAISER, AND (3) ORDERING<br>PROCEDURES TO ADDRESS MR.<br>FRIEDMAN'S FEE DISPUTES WITH<br>THE PLAINTIFFS**<br><br>[Re: ECF Nos. 183, 193-3] |

## INTRODUCTION

Six former employees sued the Kaiser entities (collectively, "Kaiser") for employment discrimination, raising individual and class claims under federal and state law. (Second Amended Complaint ("SAC"), ECF No. 53.)[1] In December 2013, they settled their individual claims in a confidential settlement agreement and dismissed the class claims without prejudice. (Settlement Agreement, ECF No. 182-5; Stipulation and Order, ECF No. 180.) The settlement agreement provided for the payment of attorney's fees to the three attorneys who represented the plaintiffs. One of the attorneys, Jeremy Friedman, then sued five of the plaintiffs in state court, alleging breach-of-

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the tops of the documents.

1 contract and quantum-meruit claims based on his failure to recover his full statutory attorney's fees in
2 the settlement. (State Compl., ECF No. 182-4.) The five plaintiffs move to enforce the settlement
3 agreement, arguing that it resolved the fees issues and precludes the state-court lawsuit. (Motion,
4 ECF No. 183 at 2.) Mr. Friedman opposed the motion and moved to invoke ancillary jurisdiction over
5 the dispute, arguing that (1) Kaiser abused the settlement process by dividing him from his clients,
6 who directed him to sign the settlement agreement, (2) Kaiser must pay his statutory fees, and (3)
7 alternatively, the plaintiffs must pay them. (Opposition and Motion, ECF No. 193-3 at 5-6, 8.)

8     The court finds the case suitable for disposition without oral argument pursuant to Civil Local
9 Rule 7-1(b). The court (1) denies the plaintiffs' motion to enforce the settlement agreement for lack
10 of jurisdiction, (2) denies Mr. Friedman's motion for fees from Kaiser on the ground that he should
11 have raised the issue at the time the parties submitted their stipulated dismissal for the court's
12 approval, and (3) asserts ancillary jurisdiction to resolve the fees dispute between Mr. Friedman and
13 the plaintiffs and orders the process set forth at the end of this order to address that dispute.

14 **STATEMENT**

15 **I. THE CLAIMS**

16     The named plaintiffs are Brenda Hill, Medhanie Berhe, Patsy Hardie, Michelle Mike, Evelynn
17 Jennings, and Rena Harrison. (SAC ¶¶ 7-12.) They sued Kaiser – individually and on behalf of a
18 class and a subclass – for violating several federal laws (Title VII, 42 U.S.C. § 2000e-2 *et seq.*; the
19 Civil Rights Act, 42 U.S.C. § 1981; and the Americans with Disabilities Act ("ADA"), 42 U.S.C.
20 §12101 *et seq.*) and California's Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code §
21 12900 *et seq.* (*Id.* ¶¶ 78-105.) The Second Amended Complaint defined the class and the subclass as
22 (1) a class of all African-Americans or persons of African descent or origin who were employed by
23 Kaiser to perform certain administrative or clerical tasks and (2) a subclass of African-American
24 women. (*Id.* ¶¶ 17, 24.) The chart summarizes the claims:

| # | Claim and Statutes | On behalf of individuals, class, or subclass |
|---|---|---|
| 1 | Discriminatory employment practices in violation of Title VII and FEHA | All plaintiffs and the entire class |
| 2 | Discriminatory employment practices in violation of Title VII, 42 U.S.C. § 1981, and FEHA | All plaintiffs and the entire class |

| 3 | Discriminatory employment practices in violation of Title VII and FEHA | Plaintiffs Hill, Hardy, Mike, Jennings, and Harrison and the subclass |
|---|---|---|
| 4 | Discriminatory employment practices in violation of Title VII, 42 U.S.C. § 1981, and FEHA | Plaintiffs Hill, Hardy, Mike, Jennings, and Harrison and the subclass |
| 5 | Failure to accommodate and wrongful discharge in violation of FEHA and the ADA | Plaintiffs Hardy, Mike, and Harrison |

## II. THE RELEVANT TERMS OF THE SETTLEMENT AGREEMENT

The case settled with a confidential settlement agreement signed by the parties and all counsel on December 6, 2013. (Settlement Agreement, ECF No. 182-5; *see* Stipulation and Order, ECF No. 180, ¶ 10.) The agreement had programmatic components and provided for a total settlement payment of ▉▉▉▉. (Settlement Agreement ¶¶ 2, 3, 17.) Of that total, ▉▉▉▉ was allocated in individual settlement payments to the individual plaintiffs, and ▉▉▉▉ was allocated in attorney's fees and costs to the three plaintiffs' lawyers as follows: Jeremy L. Friedman – ▉▉▉▉; Gordon W. Renneisen – ▉▉▉▉; Kendra L. Tanacea – ▉▉▉▉; and costs – ▉▉▉▉. (*Id.* ¶ 2(a)-(g).) The settlement agreement then allocated the amounts to the individual plaintiffs: "This total amount of attorneys' fees and costs is attributable to claims for attorneys' fees and costs by the individual Plaintiffs calculated on a pro rata basis according to their Individual Settlement Payments as follows:

(i) Berhe: ▉▉▉▉

(ii) Hardy: ▉▉▉▉

(iii) Harrison: ▉▉▉▉

(iv) Hill: ▉▉▉▉

(v) Jennings: ▉▉▉▉

(vi) Mike: ▉▉▉▉ [.]"

(*Id.* ¶ 2(g).) The settlement agreement also had the following provisions about fees.

    5. **Entire Compensation**. Plaintiffs and Plaintiffs' Counsel agree that the above Settlement Payment shall constitute the entire consideration due them and is in full and complete satisfaction of any and all claims, demands and/or causes of action they have or may have against Defendants, including but not limited to any and all claims and/or rights to attorneys' fees whether such claims and/or rights are statutory, contractual, equitable, based on common law, or grounded upon any other theory whatsoever. Attorneys' fees were specifically negotiated by the parties and their counsel in resolving Plaintiffs' individual claims in the lawsuit, and the amount of attorneys' fees allocated in this Agreement shall be fully and finally deemed to be reasonable attorneys' fees pursuant to any statute under which Plaintiffs may have a right to recover attorneys' fees in connection with the Lawsuit. Plaintiffs and Plaintiffs' Counsel further represent and agree that no

  Plaintiff and no Plaintiffs' Counsel will seek any further compensation or other relief from any Defendant for any other claimed damages, costs, or attorneys' fees in connection with the matters encompassed in this Agreement. Plaintiffs further agree to assume full responsibility to pay any third-party liens. Plaintiffs represent and warrant that no notice has been given of any third-party liens relating to the Lawsuit, and as of the date of execution of this Agreement, Defendants have received no such notice. If Defendants receive notice of any third-party liens between the time this Agreement is executed and payment of the Settlement Payment, Plaintiffs agree that Defendants may withhold the amount of the third-party lien or add the name of the third-party to the Settlement Payment check. Plaintiffs acknowledge and agree that they would not be entitled to receive the Settlement Payment above if they did not make the promises that they are making in this Agreement.

(*Id.* ¶ 5.)

  17. **No Attorneys' Fees and Costs**. The Parties agree that except as otherwise expressly stated herein, they shall bear their own respective costs and fees, including but not limited to attorneys' fees, expert and consultant fees, and costs that (a) have been incurred in connection with the Lawsuit and the negotiation and execution of this Agreement, and (b) may be incurred at any time in the future to monitor progress relating to the Programmatic Commitments referred to in Section 3 above and set forth in Exhibits A-C. Plaintiffs and Plaintiffs' Counsel expressly waive any claim and/or right to attorneys' fees of any kind against any Defendant or Releasee, including those based on statute, contract, equity, common law, or any other theory whatsoever, and agree that they will not seek any additional attorneys' fees or costs of any nature in connection with the Lawsuit, its settlement, any monitoring, or any follow-up or work of any nature related to any of the matters set forth in this Agreement.

(*Id.* ¶ 17.) The agreement had the following arbitration clause:

  18. **Arbitration**. Any claim by any Party for breach or enforcement of any provision of this Agreement shall be subject to binding arbitration before a mutually-agreeable arbitrator; provided, however, that if Defendants fail to make the Settlement Payment as set forth in Section 2 above, Plaintiffs may bring a lawsuit against Defendants in the United States District Court for the Northern District of California in San Francisco.

  Any arbitration will be conducted pursuant to the then-current employment dispute resolution rules of the American Arbitration Association. If the parties are not able to mutually agree to an arbitrator within thirty (30) days of written notice that the claim is submitted for binding arbitration then the party against whom the claim is asserted may elect to select an arbitrator from the AAA or JAMS, Inc. full employment dispute panel of neutrals for California. The parties will strike alternatively from the full panel of neutrals provided by the service selected, with the party submitting the claim striking first until only one name available to serve remains on the list. The arbitration shall take place in San Francisco, California. The decision of the arbitrator shall be final and confidential, and the parties waive the right to trial *de novo* or appeal, excepting only for the purpose of confirming the arbitrator's decision. The Party asserting any breach will have the burden of proof with respect thereto.

(*Id.* ¶ 18.) The agreement had this integration clause:

  23. **Entire Agreement**. This Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings between the Parties pertaining to the subject matter of this Agreement. The Parties agree that no change to or modification of this Settlement Agreement shall be valid or binding unless it is in writing and signed by each Plaintiff and a duly authorized officer of Defendants.

(*Id.* ¶ 23.)

## III. THE DISMISSAL OF THE FEDERAL CASE

On December 9, 2013, the parties stipulated to the undersigned's jurisdiction:

> In accordance with the provisions of Title 28, U.S.C. Section 636(c), the undersigned parties hereby voluntarily consent to have United States Magistrate Judge Laurel Beeler conduct any and all further proceedings in the case, including trial, and order the entry of a final judgment and/or dismissal of the entire case. Appeal from any judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit.

(Stipulation, ECF No. 176.) On December 10, 2013, the parties filed, and the court approved, a stipulated dismissal. (Stipulation, ECF No. 178; Stipulation and Order, ECF No. 180 at 8.) The court's order in its entirety reads as follows:

> Following the referral of this matter for settlement purposes and the parties['] consent to proceed before a United States Magistrate Judge for all purposes, and based upon the foregoing Stipulation, the participation in numerous settlement conferences over more than a five[-]month period, and review of the relevant facts, including the complete terms of the parties' confidential settlement agreement, this Court finds:
>
> 1. The dismissal of the putative class claims without prejudice and without notice by the Court will not prejudice any rights of putative class members. There is no evidence that any putative class members have relied on Plaintiffs' class claims in lieu of filing their own individual claims, and it is unlikely that any would have done so because there has not been any significant media coverage of the case. Nonetheless, the parties have agreed to give appropriate written notice to those few individuals identified by Plaintiffs' counsel that one or more counsel communicated with about this lawsuit while it was pending.
>
> 2. Putative class members will not be prejudiced by a rapidly approaching statute of limitations, because they will be in the same position that they would have been at the time the alleged class claims were filed.
>
> 3. Finally, Plaintiffs have not made any concession of class interests to further their own self-interests.
>
> ACCORDINGLY, IT IS ORDERED AS FOLLOWS:
>
> (a) Plaintiffs' entire complaint is hereby dismissed.
>
> (b) All Plaintiffs' individual claims are dismissed with prejudice. The putative class claims, which have not been certified as a class, are dismissed without prejudice; and
>
> (c) The dismissal of the uncertified class claims is approved without notice by the Court to members of the proposed class.

(*Id.*)

## IV. WITHHOLDING OF FUNDS AND SUBSEQUENT ARBITRATION AND LITIGATION

On December 6, 2013 (the same day the parties and counsel signed the settlement agreement), the three plaintiffs' lawyers signed a hand-written "Trust Account Agreement" withholding 37% of the

1   monies allocated to the individual plaintiffs "until either (a) any client and Mr. Friedman agree to the
2   release of funds relating to that client; or (b) any fee claim asserted by J. Friedman against clients is
3   fully resolved." (Trust Account Agreement, ECF No. 182-6 at 2-3.) Some of the withheld amounts
4   were distributed to the plaintiffs (resulting in a 31% retention), and Ms. Hill resolved her dispute with
5   Mr. Friedman, paying him an additional ▇▇▇; this brought his total fees to ▇▇▇ (▇▇▇
6   plus ▇▇▇). (*See* BASF Non-Binding Arbitration Award, BASF Case No. 14.018, ECF No. 182-7
7   at 2, 5.) At this point, the withheld funds totaled ▇▇▇ for the remaining plaintiffs. (*Id.*)

    The plaintiffs sought binding arbitration through the Bar Association of San Francisco ("BASF");
9   Mr. Friedman requested non-binding arbitration. (*Id.* at 5.) The BASF panel held a hearing in January
10  2015, and in April 2015, issued a non-binding award in favor of the plaintiffs, finding that a fee of
11  more than ▇▇▇ to Mr. Friedman "would be unreasonable." (*Id.* 6-7.) The panel reached its result
12  by a lodestar analysis and by reference to the settlement agreement's integration clause. (*Id.* at 2-7.)
13  "As required by law, within 30 days of service, Attorney Friedman filed his rejection of the award
14  and initiated a complaint in Superior Court" against all plaintiffs except Ms. Hill. (Opposition and
15  Motion, ECF No. 193-3 at 18.) On May 20, 2015, the five plaintiffs filed the motion to enforce the
16  settlement agreement to preclude Mr. Friedman from litigating the issue regarding fees in state court.
17  (Motion, ECF No. 183.) Mr. Friedman opposed the motion and also asked the court to invoke its
18  ancillary jurisdiction to resolve disputes about his fees. (Motion and Opposition, ECF No. 193-3.)

## V. OTHER INFORMATION RELEVANT TO MR. FRIEDMAN'S FEES

20   Mr. Friedman says that he reasonably and necessarily expended more than 1,507 hours in the
21  litigation, which results in a lodestar of $1,183,230.50 (using $785 per hour). (Opposition and
22  Motion, ECF No. 193-3 at 16.) He asserts that this results in "a reasonable fee under California law of
23  $2,366.461." (*Id.*)
24   Mr. Friedman negotiated a three-step, sequential process for settlement discussions: (1) negotiate
25  programmatic relief, (2) negotiate relief for the clients, and (3) address payment of reasonable
26  statutory attorney's fees. (*Id.* at 14.) After negotiating programmatic commitments, the parties
27  "reach[ed] a tentative agreement on the amount of damages" for the plaintiffs "at a level ▇▇▇
28  ▇▇▇▇▇▇" and "at the high end of what disputing plaintiffs reasonably could have hoped

for, given the infirmities of their individual claims." (*Id.* at 14-15.) He was never allowed to participate in Phase 3 (but he submitted a declaration on fees). (*Id.* at 15.) Kaiser negotiated fees with the plaintiffs' other counsel and submitted a detailed written settlement offer with amounts allocated to the plaintiffs and counsel. (*Id.*)

Pursuant to California Business & Professions Code § 6103.5, which requires an attorney to present his clients with an opposing party's written offer of settlement, Mr. Friedman gave his clients the written settlement offer and explained its provisions. (*Id.* at 16.) He explained his objections to certain clauses (such as clauses about confidentiality and future employment). (*Id.*) He saw his associated counsel give independent advice to the clients. (*Id.*) He told them he did not consent to waive statutory fees. (*Id.*) He explained that the clients could direct him to consummate the settlement as written, and he would do so over his objections. (*Id.*) He explained that "such a directive would force the clients and attorneys into a fee dispute which would have to be addressed and resolved subsequent to the settlement." (*Id.*) The plaintiffs directed him to sign the settlement agreement, and he did. (*Id.* at 17.) The plaintiffs' counsel drafted the Trust Account Agreement (discussed above) to memorialize Mr. Friedman's "objections and reservations." (*Id.*)

## ANALYSIS

### I. GOVERNING LAW ON SETTLEMENT AGREEMENTS

The legal rules governing settlement agreements are straightforward; the parties do not disagree over them. "The interpretation of a settlement agreement is governed by principles of state contract law." *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993) (citing *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990)). "This is so even where a federal cause of action is 'settled' or 'released.'" *Id.* (citing *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)). California contract law thus governs whether the parties entered into an enforceable agreement. *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014).

Courts have "the inherent power summarily to enforce a settlement agreement involving an action pending before it." *Brionez v. U.S. Dep't of Agric.*, No. C 01-3969 CW, 2007 WL 217680, at *2 (N.D. Cal. Jan. 26, 2007) (citing *In re Suchy*, 786 F.2d 900, 902-903 (9th Cir. 1985)). But courts have no inherent power to enforce settlement agreements after a case has been dismissed: "Enforcement of

the settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994); *see Hagestad v. Tragesser*, 49 F.3d 1430, 1433 (9th Cir. 1994). Thus, if the original action has been dismissed, and the court has not retained jurisdiction to enforce the settlement agreement, a party seeking to enforce the terms of the settlement agreement must file a new action in a court that has subject-matter jurisdiction. Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. before Trial* ¶ 15:141 (The Rutter Group 2015). For a case to be in federal court, this means that there must be diversity jurisdiction because enforcing a settlement does not involve a federal question. *Id.* (citing *Limbright v. Hofmeister*, 566 F.3d 672, 676 (6th Cir. 2009)); *see O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995) (*per curiam*) .

Parties who wish to retain the court's jurisdiction to enforce their settlement agreement must either (1) have the court retain jurisdiction expressly or (2) incorporate the terms of the settlement agreement in the order of dismissal. Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. before Trial* ¶ 15:141.1 (The Rutter Group 2015). "In the latter event, breach of the settlement agreement violates the court's order, thereby creating *ancillary jurisdiction* to enforce the agreement." *Id.* (italics in original) (citing *Kokkonen*, 511 U.S. at 381; *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014)). A dismissal that is "based on" an agreement does not "embody" the agreement, and the court does not have ancillary jurisdiction to enforce the agreement. *See O'Connor*, 70 F.3d at 532 (citing *Kokkonen*, 511 U.S. at 581). Similarly, attaching the agreement to the dismissal order may show the judge's awareness of and approval of the settlement, but it does not "incorporate" the agreement as required by *Kokkonen*. Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. before Trial* ¶ 15:141.3 (The Rutter Group 2015) (citing *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 431 (5th Cir. 2002)).

An essential element of any contract is "consent" to — or a "meeting of the minds" on — the agreement's material terms. *See Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 810-14 (1998). To be enforced, a settlement must also meet two specific requirements: (1) it must be a complete agreement; and (2) the settling parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.

1987); *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977); *Hamilton v. Willms*, No. CV F 02-6583 AWI SMS, 2007 WL 707518, at *9 (E.D. Cal. Mar. 6, 2007). "Under California law," moreover, "the intent of the parties determines the meaning of the contract." *United Commercial*, 962 F.2d at 856 (citing Cal. Civ. Code §§ 1636, 1638). "The relevant intent is 'objective' — that is, the intent manifested in the agreement and by surrounding conduct — rather than the subjective beliefs of the parties." *Id.* Therefore, if a party does not express its true intent as to the meaning of a material term of a settlement agreement, that subjective intent is "irrelevant." *See id.*

## II. THERE IS NO JURISDICTION TO ENFORCE THE SETTLEMENT AGREEMENT

The plaintiffs — joined by Kaiser and by their former counsel Kendra Tanacea and Gordon Renneissen — contend that Mr. Friedman's state lawsuit against his clients violates the settlement agreement, which "'fully and finally' resolved the issues of attorneys' fees, specifying the exact amounts to be awarded to Plaintiffs' counsel — including Mr. Friedman." (Motion, ECF No. 183 at 6; *see* Joinders, ECF Nos. 195, 198, 201.) They assert that the court has jurisdiction to enforce the settlement agreement and issue an order precluding Mr. Friedman from relitigating the amount of fees. (Motion, ECF No. 183 at 6-11.) To support their argument that the court has jurisdiction, they say that the court "expressly incorporat[ed] and rel[ied] upon the terms of the Settlement Agreement in the December Order." (*Id.* at 7; *see* Reply, ECF No. 199 at 6-7.) The court disagrees and concludes that it lacks subject-matter jurisdiction because it did not incorporate the terms of the settlement agreement in its order dismissing the case.

In the order, the court found that dismissing the class claims without prejudice did not prejudice the rights of the putative class members. (Stipulation and Order, ECF No. 180 at 8.) It made that finding based on the relevant proceedings and facts, including the settlement agreement itself. (*Id.*) The main point of the stipulated order of dismissal was to obtain the court's approval of dismissal of the class claims.[2] It was manifestly not to retain jurisdiction to enforce the settlement agreement,

---

[2] Unlike a class-action settlement that the court must approve, *see* Fed. R. Civ. P. 23(e), the court need not approve pre-certification dispositions. That does not mean that the court does not have some discretion – as it did under the old Rule 23(e) – to review the fairness of a pre-certification settlement. *See* Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. before Trial* ¶ 10:790 (citing Adv. Comm. Notes to 2003 Amendments to Fed. R. Civ. P. 23). In part,

ORDER
No. 3:10-cv-02833-LB                              9

1  which has an arbitration clause. (*See* Settlement Agreement, ECF No. 182-5, ¶ 18.) The arbitration
2  clause requires binding arbitration for all breaches except Kaiser's failure to pay the settlement
3  payment (which would have allowed the plaintiffs to sue Kaiser in the Northern District). (*Id.*) For
4  obvious reasons, then, the order did not incorporate the settlement agreement into the order. (*See*
5  Stipulation and Order, ECF No. 180 at 8.)

6      Moreover, a plain-language reading of the order shows that the court only referred to the
7  settlement agreement and did not incorporate it. A settlement agreement is "made part of the order of
8  dismissal–either by separate provision (such as a provision 'retaining jurisdiction' over the settlement
9  agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen*, 511
10 U.S. at 381. "In that event, a breach of the agreement would be a violation of the order, and ancillary
11 jurisdiction to enforce that agreement would therefore exist." *Id.* Here, the court referred to the
12 agreement to support its dismissal of the class claims. That reference shows the court's awareness of
13 the settlement agreement. It also shows the court's approval of the agreement, including (1) the
14 dismissal of the putative class claims without prejudice, (2) the payments to the individual plaintiffs,
15 (3) "the amount of attorneys' fees allocated in this Agreement" as "reasonable attorneys' fees
16 pursuant to any statute under which Plaintiffs may have a right to recover attorneys' fees in
17 connection with the Lawsuit," and (4) the total payment of ▮▮▮▮▮▮ in payments, fees, and costs as
18 "the entire consideration due [to the plaintiffs and the plaintiffs' counsel] . . . in full and complete
19 satisfaction of any and all claims, demand and/or causes of action they have or may have against
20 Defendants, including but not limited to any and all claims and/or rights to attorney's fees . . . ."
21 (Settlement Agreement ¶¶ 2, 5.) But approval "based upon" an agreement does not "embody the
22 settlement agreement" or incorporate it. *See O'Connor*, 70 F.3d at 532 (citing *Kokkonen*, 511 U.S. at
23 581). The court does not have ancillary jurisdiction to enforce the agreement. *See id.*

24 **III. MR. FRIEDMAN'S FEES**

25     Mr. Friedman contends that he is entitled to his statutory fees, either from Kaiser or the plaintiffs.
26 (Opposition and Motion, ECF No. 193-3 at 6, 8.) The fees at issue are ▮▮▮▮▮▮, which is the

27 ───────────────

28 the review here was because at least some class members had notice, and the parties devised – and the court approved – procedures to give notice. (*See* Stipulation and Order, ECF No. 180 at 8.)

difference between ▮▮▮▮ (the ▮▮▮▮ paid to him under the settlement agreement plus the extra ▮▮▮▮ from Ms. Hill) and his "reasonable fees" under California's FEHA of $2,366,461. (*Id.* at 5 n.1, 6, 16.) The "reasonable fees" of $2,366,461 are based on a 2.0 multiplier of his lodestar of $1,183,230.50 (1,507 hours times $785 per hour). (*Id.* at 16.) Mr. Friedman does not invoke the settlement agreement as a basis for jurisdiction although he notes that the parties agree that the court has jurisdiction to resolve the fees dispute. (*Id.* at 18-21.) Instead he contends that the court has ancillary jurisdiction over fees disputes that are collateral to the litigation, "even when the Court lacks jurisdiction to enforce a Settlement." (*Id.* at 18.) He explains that a court's discretion is broad over collateral matters such as attorney's fees. (*Id.*, citing *K.C. v. Torlakson*, 762 F.3d 963 (9th Cir 2014).)

*K.C. v. Torlakson* establishes that a court's jurisdiction over fee disputes survives dismissal following settlement. 762 F.3d at 969. The *Torlakson* parties settled a case involving the state's alleged failure to accommodate students with disabilities; the settlement included an award of $400,000 in attorney's fees. *Id.* at 965. The court dismissed the case with prejudice in August 2007 and retained jurisdiction for two-and-one-half years, until January 24, 2010, solely to enforce certain clauses (unrelated to attorney's fees) in the settlement agreement. *Id.* at 965, 967. "[W]ell after that date," the plaintiffs filed a motion for attorney's fees for their monitoring of post-settlement compliance. *Id.* at 966, 967-68. The settlement agreement did not provide for the additional fees; instead the plaintiffs sought them as prevailing parties under the relevant federal statutes: the ADA, section 504 of the Rehabilitation Act of 1973, and the Individuals with Disabilities Education Act. *Id.* at 966, 969. Because the plaintiffs were seeking fees pursuant to federal law, the court reversed the district court's holding that it lacked jurisdiction and remanded to the district court to consider whether the plaintiffs were entitled to attorney's fees under the federal statutes. *Id.* at 970-71. In doing so, the court made several observations that are relevant here. First, it limited its holding to the jurisdictional question and left the merits to the district court. *Id.* at 970-71. Second, it noted that "the exercise of ancillary jurisdiction is discretionary." *Id.* at 971. Third, it said the following:

> It bears repeating that Plaintiffs are seeking attorneys' fees pursuant to federal law. This is not an attorney-client fee dispute that could be resolved in state court as a breach of contract claim. As the Seventh Circuit has said, "[t]he purpose of the ancillary jurisdiction of the federal courts . . . is to enable a federal court to render a judgment that resolves the entire case before it and to

effectuate its judgment once it has been rendered." *Shapo v. Engle*, 463 F.3d 641, 644-45 (7th Cir. 2006.) "It is not to enable a federal court to encroach on the jurisdiction reserved to the states merely because the parties would prefer to have a federal court resolve their future disputes. . . ." *Id.* at 645.

Moreover, even assuming that Plaintiffs could recast their motion as a claim for attorneys' fees in a separate federal lawsuit, it is not "necessary" for them to do so. *Schmidt* [*v. Zazzara*], 544 F.2d [412,] 414 [(9th Cir. 1976)] (citation and internal quotation marks omitted). Requiring a separate lawsuit—that hypothetically would invoke federal question jurisdiction—not only would interfere with the district court's powers to render a judgment that resolves the entire case and to effectuate its judgment, but also would harm judicial economy and efficiency. Practically speaking, any such separate "attorneys' fees only" lawsuit likely would be referred to the district judge who presided over the underlying lawsuit anyway.

*Id.* at 970. A court thus has discretion to "exercise ancillary jurisdiction 'over attorney fee disputes collateral to the underlying litigation.'" *Id.* at 968 (quoting *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004)).

With this context, the court examines the claim for fees against Kaiser and the plaintiffs.

**A. Kaiser**

Mr. Friedman seeks fees against Kaiser. He disavows any reliance on the settlement agreement. (Opposition, ECF No. 193-3 at 20.) Instead, his claim "arises out of this Court's inherent power to award fees and protect fee-shifting provisions." (*Id.*) He recognizes that the Supreme Court approved a settlement of a civil rights case with a fee waiver in *Evans v. Jeff D.*, 475 U.S. 717 (1986). (*Id.* at 22.) But he notes that the Court required a case-by-case review for waivers that might undermine the purpose of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. (*Id.* at 22-23.) He also argues that the FEHA inquiry is different because the California Supreme Court held in *Flannery v. Prentice* that fees awarded under FEHA belong to the attorney, not the client. (*Id.* at 23, citing *Flannery*, 26 Cal. 4th 572, 588-90 (2001).)

In Mr. Friedman's view, Kaiser crossed the line to secure the plaintiffs' agreement to a fee waiver without his consent. (*Id.* at 22.) He asserts that Kaiser manipulated the settlement process to deny him his reasonable fee, drove a wedge between him and the plaintiffs, and induced the plaintiffs to force him to reduce his fees, in part by speaking directly to the plaintiffs in violation of California's rule of professional conduct that prohibits contacts with represented persons. (*Id.* at 24 & n.30, citing Cal. R. Prof. Conduct 2-100.) The settlement process also violated his three-step sequential process to stage settlement: programmatic relief, monies to the plaintiffs, and fees to the attorneys. (*Id.* at 24.) He

1  argues too that it undermined the purpose of FEHA, violated the standards in *Jeff D.*, and was meant
2  to dissuade him from representing clients or reporting information gained in the litigation to the
3  EEOC and the California's Department of Fair Employment and Housing. (*Id.* at 24-25.) He asks the
4  court to order further proceedings to determine his reasonable fees (not already paid) and award them
5  against Kaiser. (*Id.* at 23.) He also asks the court to delineate the "acceptable and unacceptable
6  tactics" that may be taken in FEHA cases to guide the parties and future litigants. (*Id.* at 25.)

A threshold consideration is the timing of Mr. Friedman's motion. The parties and counsel signed the settlement agreement on December 6, 2013, consented to the undersigned's jurisdiction on December 9, 2013, and submitted a stipulated order for dismissal that the court signed on December 10, 2013. Mr. Friedman filed his motion in June 2015.

Mr. Friedman could (and should) have raised his challenges to the settlement agreement when the parties submitted their stipulated dismissal. (*See* Stipulation and Order, ECF No. 180.) The parties represented that they had "agreed to a confidential settlement" and that the plaintiffs' "individual claims have been resolved to the mutual satisfaction of the Parties." (*Id.* ¶ 9.) They asked the court to approve the dismissal based (in part) on the court's "close[] involve[ment] in the Parties' settlement negotiations and . . . review[ of] the final terms of the Parties' Confidential Settlement Agreement." (*Id.* ¶ 10.) In response, the court – "based upon the foregoing Stipulation, the participation in numerous settlement conferences over more than a five[-]month period, and review of the relevant facts, including the complete terms of the parties' confidential settlement agreement" – approved the dismissal of the class claims without prejudice and the individual claims with prejudice. (*Id.* at 8.)

Mr. Friedman's failure to challenge the settlement agreement then precludes him from doing so now, 18 months after the dismissal of the case. One cannot serially litigate issues, re-litigate issues, fail to raise issues that necessarily are part of a case, or take inconsistent positions (such as claiming the benefit of a settlement agreement and then later challenging it): this is why doctrines of collateral estoppel, res judicata, equitable estoppel, and judicial estoppel exist. A contrary rule jeopardizes interests in fair play and finality – whether by adjudication, settlement, or dismissal. Moreover, to the extent that Mr. Friedman had standing to do so, he did not appeal the court's approval of the settlement and the subsequent dismissal. *See Al-Torki v. Kaempen*, 78 F.3d 1381, 1384-85 (9th Cir.

1996) (dismissal with prejudice is a final, appealable order); *cf. Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1064-66 (9th Cir. 2014) (discussing interplay of settlement, dismissal, and standing); *Smith v. Egger*, 655 F.2d 181, 184-85 (9th Cir. 1991) (order enforcing settlement agreement is an appealable order); *Willard v. City of Los Angeles*, 803 F.3d 526, 527 (9th Cir. 1986); *Mitchell v. City of Los Angeles*, 753 F.3d 86, 87 (9th Cir. 1984). One generally cannot raise an issue for the first time on appeal, but waiver (by failing to raise an issue in district court) generally is a rule of discretion, and not jurisdiction. *United States v. Northrop Corp.*, 59 F.3d 953, 957 n.2 (9th Cir. 1994); *Dodd v. Hood River Cnty.*, 59 F.3d 852, 863-64 (9th Cir. 1995). Mr. Friedman had 30 days – plus perhaps 150 days because no separate judgment issued – to appeal the court's final order. *See* Fed. R. App. P. 4(a)(1)(A); Fed. R. Civ. P. 58(c)(2)(B).

Mr. Friedman's failure to raise the claim against Kaiser at the time of dismissal was not inadvertence, excusable neglect, a mistake, or otherwise excusable. *See* Fed. R. Civ. P. 60(b).

First, he elected to sign a settlement agreement that fully settled the claims, and "Plaintiffs and Plaintiffs' Counsel expressly waive[d] any claim and/or right to attorneys' fees of any kind against any Defendant or Releasee, including those based on statute, contract, equity, common law, or any other theory whatsoever, and agree that they will not seek any additional attorneys' fees or costs of any nature in connection with the Lawsuit, its settlement, any monitoring, or any follow-up or work of any nature related to any of the matters set forth in this Agreement." (Settlement Agreement ¶ 17.) As Kaiser points out, Mr. Friedman had other options: he could have withdrawn from representation or asserted a lien against the proceeds. (Kaiser Opposition, ECF No. 200-4 at 12.)

Second, the record establishes that Mr. Friedman did so knowingly and in anticipation of pursuing his remedies for his fees against the plaintiffs. At the time of settlement, he withheld 37% of the plaintiffs' settlement payments "until either (a) any client and Mr. Friedman agree to the release of funds relating to that client; or (b) any fee claim asserted by J. Friedman against clients is fully resolved." (Trust Account Agreement, ECF No. 182-6 at 3.) He then pursued non-binding arbitration through the Bar Association and, when the BASF panel issued its award in favor of the plaintiffs, he sued the plaintiffs in state court.

The court recognizes that the plaintiffs filed the pending motion against Mr. Friedman in May

2015, perhaps creating what Mr. Friedman saw as an opportunity to resuscitate a claim that he never timely raised before the court. But considerations of finality compel the conclusion that Mr. Friedman cannot now litigate any claim for attorney's fees against Kaiser.

*Torlakson* does not change this conclusion. The issue there was whether the court had ancillary jurisdiction to award attorney's fees for monitoring post-settlement compliance under a statutory scheme that permitted fees. *Torlakson*, 762 F.2d at 965, 967-69 (the settlement agreement did not preclude fees). The district court concluded that it lacked jurisdiction because its jurisdiction under the settlement agreement had ended. *Id.* at 965. The Ninth Circuit reversed because awarding fees for ongoing compliance was an appropriate exercise of the court's historic equity jurisdiction to determine appropriate fees that are necessary to effectuate the judgment and collateral to the underlying litigation. *Id.* at 968, 970.

Mr. Friedman's dispute with Kaiser about his fees is not collateral to the underlying litigation, at least at this point in time. *See id.* It is one thing to consider awarding statutory fees for ongoing monitoring of post-settlement compliance. It is another entirely to disregard the finality of a stipulated dismissal to revisit the terms of a settlement agreement 18 months after the fact. Put another way, while the court's ancillary jurisdiction would allow it to review Mr. Friedman's assertion of a claim for additional statutory fees as part of its review of the appropriateness of a settlement agreement, it does not permit him to challenge the settlement agreement now.

Other cases invoking ancillary jurisdiction over fee disputes do not change this result. For example, in *White v. New Hampshire Department of Employment*, the parties signed a settlement agreement that resulted in a consent decree and judgment. 455 U.S. 445, 447 (1982). The plaintiff then sought attorney's fees as the prevailing party. *Id.* at 447-48. The court had ancillary jurisdiction four-and-one-half months later to consider the plaintiff's request. *Id.* at 451 & n.13, 454. Critical to that holding was the unfairness of imposing a short time period – such as that under Rule 59(e) – to post-judgment motions for prevailing party fees, especially in civil rights cases involving injunctive relief. *Id.* at 452-53. Those cases are prone to a lack of clarity as to which orders may or may not be a final judgment. *Id.* at 453. There is no lack of clarity here: Mr. Friedman's ▓▓▓▓ in fees were obviously part of the settlement agreement, and any objections he had to the settlement terms under

*Jeff D.* or FEHA were identifiable and properly raised then.

Mr. Friedman also cites cases collected in *Ferrante.* (*See* Opposition, ECF No. 193-3 at 19.)

*See also Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1329 (9th Cir. 1999) (court had ancillary jurisdiction to award attorney fees in class action when the underlying action had become moot); *Curry v. Del Priore,* 941 F.2d 730, 731–32 (9th Cir. 1991) (on attorney's motion to withdraw, court had ancillary jurisdiction to order refund of portion of retainer); *Reiser v. Del Monte Props. Co.,* 605 F.2d 1135, 1140 (9th Cir. 1979) (court had ancillary jurisdiction to award attorney fees to shareholders on common fund theory after the underlying action had become moot); *Grimes v. Chrysler Motors Corp.,* 565 F.2d 841, 843–44 (2d Cir. 1977) (*per curiam*) (on motion of attorney to deposit settlement proceeds in court registry, court had ancillary jurisdiction to supervise distribution, including resolving disputes among attorneys claiming fees); *Iowa v. Union Asphalt & Roadoils, Inc.,* 409 F.2d 1239, 1243–44 (8th Cir. 1969) (after attorneys had been granted leave to withdraw, court had ancillary jurisdiction to adjudicate attorneys' claim for fees); *American Fed'n of Tobacco—Growers v. Allen,* 186 F.2d 590, 592 (4th Cir. 1951) (per curiam) (after settlement of antitrust action, court had ancillary jurisdiction to resolve dispute among attorneys over distribution of fees).

(*Id.*, quoting *Ferrante*, 364 F.3d at 1041.) These cases do not change the result either. All involve the court's exercise of ancillary jurisdiction to deal with fees issues that are necessary to effectuate the court's judgment and resolve the case fully and fairly at some time reasonably related to when the fee issues arose. They are not license to attack a settlement and dismissal 18 months later on grounds that were known at the time of the settlement and could have been raised then.

Moreover, even if the court had jurisdiction, it would not award more fees now.

First, if the finality concerns do not preclude the court's discretionary exercise of ancillary jurisdiction, they militate against it.

Second, the court disagrees that Kaiser did anything inappropriate. The settlement proceedings were judicially hosted, and the parties and counsel who participated in them are reflected on the court's minute orders. (*See* ECF Nos. 150, 151, 153, 156, 160, 163, 166, 170, 172, 175.) In addition to Mr. Friedman, two other lawyers represented the plaintiffs fully and capably at each settlement conference (and they disagree with Mr. Friedman that he is entitled to more fees). (Tanacea Joinder, ECF No. 198; Renneisen Notice, ECF No. 201.) It is the nature of mediation that the parties spend time in joint session. Mr. Friedman's allegations about Kaiser's conduct do not support the court's exercise of its ancillary jurisdiction or an award of more fees.

1    Third, the court sees no violation of the standards in *Jeff D.* *Jeff D.* was a class-action lawsuit
2    brought by a class of children with emotional and mental disabilities seeking injunctive relief for
3    deficiencies in health-care and educational services (and attorney's fees and costs). 475 U.S. at
4    720-21. The issue was whether a court may approve a class settlement that conditioned
5    substantial injunctive relief on a complete waiver of attorney's fees. *Id.* at 720. The Ninth Circuit
6    held that it could not. *Id.* at 724-25. The Supreme Court reversed, holding that (1) the
7    simultaneous negotiation of merits and statutory fees is permissible in civil-rights cases, (2) there
8    is no *per se* prohibition against a defendant's making a settlement offer that conditions favorable
9    merits relief on the waiver of statutory attorney's fees, and (3) the issue of whether a particular
10   agreement is acceptable is determined on a case-by-case basis, considering the relevant
11   circumstances, to evaluate whether the merits relief is an adequate *quid pro quo* for the waiver of
12   fees. *Id.* at 727-43.       This case does not involve a fee waiver. Instead, the settlement agreement
13   explicitly provided for the payment of substantial attorney's fees in a case that did not resolve as a
14   class action and that resulted in a favorable merits settlement to the individual plaintiffs. The total
15   award to the six plaintiffs was ███████, and an additional ███████ was allocated to fees and
16   costs as follows: Jeremy L. Friedman – ███████; Gordon W. Renneisen – ███████; Kendra L.
17   Tanacea – $120,000; and costs – ███████. (Settlement Agreement, ¶ 2(a)-(g).) Mr. Friedman
18   obtained another ███████ in fees from Ms. Hill, bringing his total to ███████. (*See* BASF Non-
19   Binding Arbitration Award, ECF No. 182-7 at 2, 5.) At the time of the BASF arbitration, Mr.
20   Friedman claimed only that his services were worth $931,800, and he had withheld ███████ (the
21   amount at stake there). (*See id.*) The fees are Mr. Friedman's reasonable statutory fees that
22   presumably are supported by a lodestar cross check. *See Lealao v. Beneficial California, Inc.*, 82
23   Cal. App. 4th 19, 26 (2000) ("The lodestar . . . is produced by multiplying the number of hours
24   reasonably expended by counsel by a reasonable hourly rate." ). After all, the persons who signed
25   the settlement agreement (including Mr. Friedman and the other two plaintiffs' counsel) agreed
26   that the fees were reasonable, statutory fees. (Settlement Agreement ¶ 5; *see supra* Statement.)
27       Finally, as the Court said in *Jeff D.*,
28       Each negotiation, like each litigant, is unique; reasonableness can only be determined by
         looking at the strength of the plaintiff's case, the stage at which the settlement is

effective, the substantiality of the relief obtained on the merits, and the explanations of the parties as to why they did what they did. . . . The key in these situations is whether the defendant's offer is reasonable in light of all the circumstances, including the chances of success on the merits and the risk of possible exposure in damages and attorneys fees. And in making such determinations, the legitimate interest of the fee shifting provisions must be balanced against the legitimate interest of the defendant, whether a governmental agency or private party, in making an offer which will fix liability with considerable certainty. This balancing approach applies regardless of whether the issue is phrased in terms of the right of the defendant to make a lump sum settlement offer, or the right to refuse to pay fees to the plaintiff's attorney while providing some measure of relief to the client. In both situations, the inquiry is the same and can be decided only on a case by case basis, assessing the reasonableness of the defendant's conduct.

*Id.* at 742 n. 35 (quotations and citations omitted). Considering the strength of the plaintiffs' claims, the extent of the merits relief, the stage of the litigation, the fees that were compromised, and the explanations of the parties supporting the settlement agreement, the settlement agreement is more than acceptable under *Jeff D.*'s *quid pro quo* standard. *See id.* at 741.

The court is not persuaded by Mr. Friedman's argument that the FEHA inquiry compels a different result. (Opposition and Motion, ECF No. 193-3 at 23.) The plaintiff in *Flannery* sued her former employer (the California Highway Patrol) alleging FEHA violations; the jury awarded her $250,000 in damages. *See* 26 Cal. 4th at 575-76. The trial court awarded her lawyers statutory fees under FEHA: $891,042 in fees and costs for the case and $80,642 for fee work. *Id.* at 575. The plaintiff sued her attorneys in part on the ground that she was entitled to the entire fee award. *Id.* Characterizing the issue as a "narrow question," the court held that the fee actually awarded under FEHA belonged to the attorney absent an enforceable agreement to the contrary. *Id.* at 577, 580, 590. This decision does not support Mr. Friedman's argument that he is entitled to the multiplier under FEHA. Once awarded, the fees are his. But the plaintiffs have the right to settle the case, not Mr. Friedman. *See* Bus. & Prof. Code § 6103.5; Cal. R. Prof. Conduct 3-510; State Bar Standing Committee on Prof. Responsibility and Conduct, Former Opn. No. 2009-176; *Jeff D.*, 474 U.S. at 731-32; *cf. Levy v. Superior Ct.*, 10 Cal. 4th 578, 586 (1995). To the extent that Mr. Friedman argues that his lodestar is higher and that he is entitled to a 2.0 multiplier, the plaintiffs directed a settlement that did not include the extra fees or the multiplier.

*Lindelli v. Town of Anselmo* does not change this analysis. *See* 139 Cal. App. 4th 1499 (2006). *Lindelli* involved a case litigated to judgment, not a settlement; applying *Flannery*, the court held

that the state-law definition of "prevailing party" allowed the attorney (as opposed to the clients) to move for fees under California Code of Civil Procedure § 1021.5. *Id.* at 1502, 1513, 1516.

In sum, the court denies Mr. Friedman's motion for fees from Kaiser.

**B. Fees from the Plaintiffs**

Mr. Friedman next asks the court to establish a process for resolution of his dispute with the plaintiffs. (Opposition and Motion, ECF No. 193-3 at 27-28.) He asserts that "[w]ritten and oral agreements vested in counsel [the] authority to negotiate, and thus compromise" statutory fees. This agreement was breached by disputing plaintiffs on December 6, 2013 [the date that the parties signed the written settlement agreement]." (*Id.* at 27.) He suggests that the court order limited discovery and a briefing schedule on the issue. (*Id.* at 28.)

Attorneys and clients can negotiate contingent-fee agreements that require a prevailing civil-rights plaintiff to pay his attorney more than the statutory award against a defendant. *See Venegas v. Mitchell*, 495 U.S. 82, 83-84, 87, 90 (1990). Fee disputes between litigants and their attorneys are collateral to a case:

> [D]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.

*Ferrante*, 364 F.3d at 1041 (quotation marks and citation omitted) (holding that jurisdiction did not extend to fees owing for other matters).

The plaintiffs agree that the court has ancillary jurisdiction to address the dispute. (Plaintiffs' Reply and Opposition, ECF No. 199 at 2.) The issue here is whether – in its discretion – the court should exercise jurisdiction. Factors disfavoring the exercise of jurisdiction are the BASF arbitration, Mr. Friedman's subsequent state-court lawsuit against the plaintiffs for breach of contract, and the lack of a full record about the fee agreements (*Cf. Torlakson*, 762 F.3d at 970 ("It bears repeating that Plaintiffs are seeking attorneys' fees [for their monitoring of post-settlement compliance] pursuant to federal law. This is not an attorney-client fee dispute that could be resolved in state court as a breach of contract claim."). Factors favoring the exercise of jurisdiction include the court's familiarity with the litigation and the resulting understanding of the reasonableness of the fees. Also, everyone has an interest in finality about the fees and other

collateral issues (such as Mr. Friedman's request for an accounting). (*See* Opposition and Motion, ECF No. 193-3 at 28-29.)

Considering these competing factors, the court will address the fees dispute. Following Mr. Friedman's suggestion, the court directs the parties to confer about the process for resolving the dispute and then file a joint case-management statement. The issues appear to be the following: (1) what are Mr. Friedman's fee agreements with his clients; (2) are they enforceable; (3) if so, do they support Mr. Friedman's claim for more fees; (4) if not, is there another theory (such as the quantum meruit theory advanced in state court) that supports additional fees; (5) if Mr. Friedman has a right to more fees, what is his demand from the clients; and (6) are those reasonable fees? The court also needs to have a evidentiary record (including authenticated fee agreements and supporting declarations) to address the claim for fees.

The court recognizes that the parties addressed the legal context somewhat in their respective briefs, but that is not a sufficient landscape for the court to resolve the fees dispute.

## IV. CONSENT ISSUE

Mr. Friedman asserts that the court must issue its decision as a recommendation. The court disagrees. The parties consented to the court's jurisdiction for all proceedings. (Stipulation, ECF No. 176.) The court has ancillary jurisdiction to resolve the parties' fee disputes.

## CONCLUSION

The court denies the plaintiffs' motion to enforce the settlement agreement and denies Mr. Friedman's motion for fees from Kaiser. The court directs the following process to address Mr. Friedman's fee dispute with the plaintiffs. By September 24, 2015, the parties must confer and then file a joint case-management with their dispute-resolution proposal, including their proposed briefing and hearing dates. Proposed dates must be in a chart format. Disagreements must in separate columns, and the chart must have a blank column for the court's ruling. The parties must email a Word version to lbpo@cand.uscourts.gov. The court sets a case-management conference for October 1, 2015 at 11:00 a.m. This disposes of ECF Nos. 183 and 193-3.

**IT IS SO ORDERED.**

Dated: September 1, 2015

LAUREL BEELER
United States Magistrate Judge